IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

| | |
|---|---|
| WESTFIELD NATIONAL INSURANCE COMPANY | Case No. 5:19-cv-83-TBR |
| PLAINTIFF | *Electronically Filed* |
| VS. | |
| QUEST PHARMACEUTICALS, INC.<br>Serve:  Kevin E. Higgins, Statutory Agent<br>       300 East Chestnut Street<br>       Murray, Kentucky 42071 | |
| DEFENDANT | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Westfield National Insurance Company ("Westfield") states as follows for its Complaint for declaratory judgment against defendant Quest Pharmaceuticals, Inc. ("Quest"):

### Count I

1. Westfield is an Ohio corporation, with its principal place of business in Ohio. Westfield is authorized to issue policies of insurance in the Commonwealth of Kentucky and elsewhere.

2. Quest is a Kentucky corporation, with its principal place of business in Kentucky. Quest is a pharmaceutical wholesaler, and conducts business in Kentucky and elsewhere.

3. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, based on diversity of citizenship.

5. This is a declaratory judgment action under 28 U.S.C. § 2201 and KRS 418.040, concerning insurance coverage for multiple lawsuits against Quest, which allege that Quest's improper distribution and sale of opioid medications caused or contributed to the current opioid crisis in Kentucky and elsewhere, resulting in economic and other non-physical harm to the plaintiff governmental entities.

6. Quest is named as a Distributor Defendant in, among others, the following lawsuits ("Underlying Litigation"):

**FEDERAL**

| No. | Plaintiff | Original Forum | Current Forum | Complaint Filed | Date Served |
|---|---|---|---|---|---|
| 1 | *City of Oklahoma City* | Oklahoma District Court of Oklahoma City, No. CJ-2018-6179 | U.S. District Court for the W.D. of Ok., No. 19-CV-76 (Judge Charles Goodwin) | 11/8/2018 | 1/9/2019 |
| 2 | *City of Lawton* | Oklahoma District Court of Comanche County, No. CJ-2018-725 | U.S. District Court for the W.D. of Ok., No. 19-CV-78 (Judge Timothy DeGiusti) | 11/8/2018 | 1/9/2019 |
| 3 | *City of Edmond* | Oklahoma District Court of Oklahoma County, No. CJ-2019-158 | U.S. District Court for the W.D. of Ok., No. 19-CV-149 (Judge Joe Heaton) | 1/10/2019 | 1/22/2019 |
| 4 | *City of Ponca City* | Oklahoma District Court of Kay County, No. CJ-2019-9 | U.S. District Court for the W.D. of Ok., No. 19-CV-160 (Judge Scott Palk) | 1/10/2019 | 1/22/2019 |
| 5 | *City of Guthrie* | Oklahoma District Court of Logan County, No. CJ-19-8 | U.S. District Court for the W.D. of Ok., No. 19-CV-158 (Judge Stephen P. Friot) | 1/14/2019 | 1/22/2019 |
| 6 | *City of Yukon* | Oklahoma District Court of Canadian County, No. CJ-19-119 | U.S. District Court for the W.D. of Ok., No. 19-CV-280 (Judge Stephen P. Friot) | 2/28/19 | 3/5/2019 |
| 7 | *City of Mustang* | Oklahoma District Court of Canadian County, No. CJ-19-189 | U.S. District Court for the W.D. of Ok., No. 19-CV-339 (Judge Joe Heaton) | 3/22/19 | 4/2/19 |

| No. | Plaintiff | Original Forum | Current Forum | Complaint Filed | Date Served |
|---|---|---|---|---|---|
| 8 | *Midwest City* | Oklahoma District Court of Oklahoma County, No. CJ-19-1596 | U.S. District Court for the W.D. of Ok., No. 19-CV-345 (Judge Joe Heaton) | 3/22/19 | 4/4/19 |
| 9 | *City of Enid* | Oklahoma District Court of Garfield County, No. CJ-19-63 | U.S. District Court for the W.D. of Ok., No. 19-CV-351 (Judge Stephen P. Friot) | 3/18/19 | 3/22/19 |
| 10 | *City of Ada* | Oklahoma District Court of Pontotoc County, No. CJ-19-3 | U.S. District Court for the E.D. of Ok., No. 19-CV-34 (Magistrate Judge Steven Shreder) | 1/9/2019 | 1/14/19 |
| 11 | *Pittsburg County* | Oklahoma District Court of Pittsburg County, No. CJ-19-46 | U.S. District Court for the E.D. of Ok., No. 19-CV-100 (Magistrate Judge Kimberly E. West) | 2/25/19 | 3/5/2019 |
| 12 | *City of Broken Arrow* | Oklahoma District Court of Tulsa County, No. CJ-2019-00063 | U.S. District Court for the N.D. Ok., No. 19-CV-47 (Judge Terence Kern) | 1/7/2019 | 1/14/19 |
| 13 | *Owasso City* | Oklahoma District Court of Tulsa County, No. CJ-19-784 | U.S. District Court for the N.D. Ok., No. 19-CV-171 (Judge Gregory K. Frizzell) | 2/22/19 | 3/1/2019 |
| 14 | *Kentucky River District Health Department* | U.S. District Court for the N.D. Ohio, No. 19-op-45050 | Same. | 2/6/19 | 2/15/19 |
| 15 | *Metropolis City* | U.S. District Court for the N.D. Ohio, 18-op-45537 | Same. | 5/7/18 | N/A |
| 16 | *Massac County* | U.S. District Court for the N.D. Ohio, 18-op-45519 | Same. | 5/1/18 | N/A |
| 17 | *Alexander County* | U.S. District Court for the S.D. Ill., 17-cv-876 | U.S. District Court for the N.D. Ohio, 17-op-45050 | 8/17/17 | N/A |
| 18 | *Hardin County* | U.S. District Court for the S.D. Ill., 17-cv-1172 | U.S. District Court for the N.D. Ohio, 18-op-45003 | 10/26/17 | N/A |

# STATE

| No. | Plaintiff | Original Forum | Current Forum | Complaint Filed | Date Served |
|---|---|---|---|---|---|
| 1 | *Caddo County* | Oklahoma District Court of Caddo County, No. CJ-19-4 | Same. | 1/14/19 | N/A |

| No. | Plaintiff | Original Forum | Current Forum | Complaint Filed | Date Served |
|---|---|---|---|---|---|
| 2 | *Stephens County* | Oklahoma District Court of Stephens County, No. CJ-19-7R | *Same.* | 1/14/19 | *N/A* |
| 3 | *Jefferson County* | Oklahoma District Court of Jefferson County, No. CJ-19-1 | *Same.* | 1/14/19 | *N/A* |
| 4 | *Grady County* | Oklahoma District Court of Grady County, No. CJ-19-12 | *Same.* | 1/14/19 | *N/A* |
| 5 | *Dewey County* | Oklahoma District Court of Dewey County, No. CJ-19-5 | *Same.* | 2/22/19 | *N/A* |
| 6 | *Major County* | Oklahoma District Court of Major County, No. CJ-19-5 | *Same.* | 2/22/19 | *N/A* |
| 7 | *Harper County* | Oklahoma District Court of Harper County, No. CJ-19-8 | *Same.* | 2/22/19 | *N/A* |
| 8 | *Love County* | Oklahoma District Court of Love County, No. CJ-19-8 | *Same.* | 2/22/19 | *N/A* |
| 9 | *Kiowa County* | Oklahoma District Court of Kiowa County, No. CJ-19-9 | *Same.* | 2/22/19 | *N/A* |
| 10 | *Le Flore County* | Oklahoma District Court of Leflore County, No. CJ-19-34 | *Same.* | 2/25/19 | *N/A* |
| 11 | *Woods County* | Oklahoma District Court of Woods County, No. CJ-19-6 | *Same.* | 2/22/19 | *N/A* |
| 12 | *Atoka County* | Oklahoma District Court of Atoka County, No. CJ-19-10 | *Same.* | 2/25/19 | *N/A* |
| 13 | *Cimarron County* | Oklahoma District Court of Cimarron County, No. CJ-19-4 | *Same.* | 2/25/19 | *N/A* |
| 14 | *Latimer County* | Oklahoma District Court of Latimer County, No. CJ-19-9 | *Same.* | 2/25/19 | *N/A* |
| 15 | *Pottawatomie County* | Oklahoma District Court of Pottawatomie County, No. CJ-19-80 | *Same.* | 2/22/19 | *N/A* |
| 16 | *Texas County* | Oklahoma District Court of Texas County, No. CJ-19-11 | *Same.* | 2/25/19 | *N/A* |
| 17 | *Haskell County* | Oklahoma District Court of Haskell County, No. CJ-19-8 | *Same.* | 2/25/19 | *N/A* |
| 18 | *Logan County* | Oklahoma District Court of Logan County, No. CJ-19-35 | *Same.* | 2/25/19 | *N/A* |
| 19 | *Johnston County* | Oklahoma District Court of Johnston County, No. CJ-19-10 | *Same.* | 2/22/19 | *N/A* |
| 20 | *Kay County* | Oklahoma District Court of Kay County, No. CJ-19-56 | *Same.* | 3/11/19 | *N/A* |

| No. | Plaintiff | Original Forum | Current Forum | Complaint Filed | Date Served |
|---|---|---|---|---|---|
| 21 | *Noble County* | Oklahoma District Court of Noble County, No. CJ-19-5 | Same. | 3/11/19 | N/A |
| 22 | *City of Fort Cobb* | Oklahoma District Court of Caddo County, No. CJ-19-22 | Same. | 3/15/19 | N/A |
| 23 | *City of Anadarko* | Oklahoma District Court of Caddo County, No. CJ-19-23 | Same. | 3/15/19 | N/A |

7. The Complaints in the Underlying Litigation generally allege tortious conduct by Quest in the sale and distribution of opioid medications, with claims under federal law, state law, and common law principles.

8. By way of example, the Complaint in the Kentucky River District Health Department lawsuit asserts the following claims against Quest:

> **Count I** - Per 18 U.S.C. § 1961, violations of RICO;
>
> **Count II** - Per 18 U.S.C. § 1962, a "RICO Conspiracy" involving Quest and other named defendants;
>
> **Count III** - Negligence;
>
> **Count IV** - Wanton Negligence;
>
> **Count V** - Negligence *per se*, for violation of both Kentucky and federal controlled substance laws and regulations;
>
> **Count VII**[1] - Negligent distribution, based upon alleged violation of both Kentucky and federal law governing distributors of controlled substances;
>
> **Count VIII** - Nuisance;
>
> **Count IX** - Unjust enrichment;
>
> **Count X** - Fraud and deceit; and
>
> **Count XI** - Conspiracy to commit fraud and create a nuisance

---

[1] Count VI of the Kentucky River Complaint seeks relief against a group of defendants which does not include Quest.

Furthermore, the Kentucky River Complaint seeks the following remedies and damages: a) injunctive relief with respect to deceptive or unfair trade practices; b) an order that Quest abate the ongoing public nuisance; c) damages for the costs of abatement of the ongoing public nuisance; d) requiring the establishment of an "abatement fund" for the purpose of abating the opioid nuisance; e) actual, treble and punitive damages, along with forfeiture, legal and equitable relief, costs and attorneys' fees; and f) actual damages relating to the increased costs borne by the plaintiff for the services it provides, due to the opioid epidemic.

9. The Oklahoma Complaints generally assert the following counts against Quest:

**Count A -** Public Nuisance, per Oklahoma law;

**Count B** - Fraud, actual and constructive;

**Count C -** Negligence and negligent misrepresentation;

**Count D -** Civil conspiracy;

**Count E -** Unjust enrichment; and

**Count F** – Punitive Damages

Furthermore, the Oklahoma complaints seek the following remedies and damages: a) actual damages; b) compensation for future costs of abating the ongoing public nuisance; c) punitive damages; and d) costs and attorneys' fees.

10. The plaintiffs in the Underlying Litigation seek various monetary and equitable relief, but do not assert any claim for, or because of, physical injury to persons or property.

11. Westfield issued insurance policy number CWP3263063 to Quest, for the periods October 26, 2015-16 and October 1, 2016-17 ("Westfield Policy"). Quest has sought defense and indemnity from Westfield under the Westfield Policy. Westfield is currently defending Quest in

the Underlying Litigation (in cases in which Quest was served), but such defense is under full reservation of rights because the Westfield Policy does not cover the underlying plaintiffs' claims.

12. An actual and justiciable controversy exists between Westfield and Quest as to whether the Westfield Policy provides coverage to Quest for the Underlying Litigation. Such controversy requires a judicial declaration of the rights and responsibilities of Westfield and Quest under the Westfield Policy.

13. The Westfield Policy provides several types of coverage, but the only potentially applicable coverages are Commercial General Liability ("CGL Coverage") and Commercial Umbrella Coverage ("Umbrella Coverage").

14. CGL Coverage is provided at limits of $1 million each occurrence/$2 million Products-Completed Operations/$2 million General Aggregate. Umbrella Coverage is provided at limits of $4 million each occurrence/$4 million General Aggregate. The Westfield Policy is subject to all of its terms, conditions, and exclusions.

15. The CGL Coverage in the Westfield Policy provides coverage for Bodily Injury and Property Damage Liability ("Coverage A") and Personal and Advertising Injury Liability ("Coverage B").

16. The Coverage A insuring agreement in the Westfield Policy provides in pertinent part:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any

"suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ...

        \*   \*   \*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" . . .

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

    **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is

8

        An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

17.    The Westfield Policy sets forth the following pertinent Definitions:

    **3.**    "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".[2]

        \*  \*  \*

    **13**.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

        \*  \*  \*

    **17.**    "Property damage" means:

        **a**.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[2] The definition of "bodily injury" derives from Westfield Signature Series Commercial General Liability Endorsement No. CG7118 (11/12).

  **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18.  The Complaints in the Underlying Litigation do not allege damages for, or because of, "bodily injury" or "property damage."

19.  Coverage A only applies if "bodily injury" or "property damage" is caused by an "occurrence." At least some of the claims in the Underlying Litigation do not allege an "occurrence."

20.  Coverage A in the Westfield Policy excludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." If the Complaints in the Underlying Litigation alleged damages because of "bodily injury" or "property damage," at least some of the claims would fall within the foregoing expected or intended injury exclusion.

21.  Coverage A in the Westfield Policy applies to "bodily injury" and "property damage" only if certain insureds did not know, before the policy period, that the "bodily injury" or "property damage" had occurred, in whole or in part.

22.  Coverage A in the Westfield Policy does not apply, because Quest knew, before the Westfield Policy period, that alleged injury from improper distribution of opioids had occurred. Such knowledge is based at least in part on Quest having been sued in West Virginia in 2012 in the case *West Virginia v. AmerisourceBergen et al.*, Boone County, West Virginia Circuit Court, Case No. 12-C-141, in which the State of West Virginia sought to recover costs incurred due to the opioid epidemic.

23.  Coverage B in the Westfield Policy applies only to "damages because of 'personal and advertising injury' to which this insurance applies." The Complaints in the Underlying

Litigation do not allege any "personal and advertising injury" or damages because of "personal and advertising injury."

24. The Umbrella Coverage in the Westfield Policy is substantially similar to the CGL Coverage, and does not apply for the same reasons.

25. In addition, the Umbrella Coverage excludes coverage for:

> **s**. **Professional Services**
>
> "Bodily injury" or "property damage" due to rendering of or failure to render any professional services. This includes but is not limited to:
>
> * * *
>
> **(5)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;
>
> **(6)** Any health or therapeutic service treatment, advice or instruction;
>
> * * *
>
> **(11)** Services in the practice of pharmacy[.]
>
> * * *
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved the rendering of or failure to render any professional service.

26. If the Complaints in the Underlying Litigation alleged damages because of "bodily injury" or "property damage," the foregoing Professional Services Exclusion would nonetheless preclude coverage.

11

27. Based on the foregoing, Westfield has no duty to defend or indemnify Quest as to any of the plaintiffs' claims in the Underlying Litigation.

28. Westfield reserves the right to rely upon any and all other applicable terms, conditions, and exclusions in the Westfield Policy.

## Count II

29. Westfield restates the allegations set forth above.

30. The Westfield Policy contains an "Other Insurance" Condition that may limit or defer any coverage that Westfield may provide.

31. The Court should determine Westfield's rights under its Other Insurance Condition.

## Count III

32. Westfield restates the allegations set forth above.

33. There may be other facts not yet revealed to Westfield that would also provide a basis to disclaim coverage for some or all of the counts pled in the Underlying Litigation.

34. Westfield therefore expressly reserves all of its rights under the Westfield Policy concerning the existence of other grounds on which it is entitled to a declaration that it owes no duty to defend or indemnify Quest against the Underlying Litigation. This reservation includes the right to amend this Complaint for Declaratory Judgment to include additional bases in the Westfield Policy that entitle Westfield to the aforementioned declarations, whether or not the Lawsuits are amended to make any additional allegations, and whether additional lawsuits are filed on the same legal theories and causes of action pled.

WHEREFORE, Westfield demands judgment determining and declaring that it has no duty to defend or indemnify Quest in the Underlying Litigation, that the Court determine the nature and

extent of Westfield's contribution rights, trial by jury, and such other or further relief as may be just and proper.

Respectfully submitted,

/s/ John W. Walters
JOHN W. WALTERS
ELIZABETH M. BASS
WMR DEFENSE
771 Corporate Drive, Suite 900
Lexington, KY 40503
Phone: (859) 219-9090
Fax: (859) 219-9292
Email: john@wmrdefense.com
elizabeth@wmrdefense.com
***Attorneys for Plaintiff***
***Westfield National Insurance Company***

7202.006160C:\NRPortbl\Golden_and_Walters\LAWSONJ\1046270_1.docx