# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# PADUCAH

| | |
|---|---|
| WESTFIELD NATIONAL INSURANCE COMPANY, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| QUEST PHARMACEUTICALS, INC., | ) Case No. 5:19-cv-00083 (TBR) |
| *Defendant/Third-Party Plaintiff,* | ) |
| ASSUREDPARTNERS NL, LLC, | ) |
| *Third-Party Defendant.* | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Quest Pharmaceuticals's Motion to Alter, Amend, or Vacate, Def.'s Mot., Dkt. 44, the Court's grant of summary judgment to Plaintiff, Westfield National Insurance Company, Summ. J. Op., Dkt., 42.[1] Westfield has responded, Pl.'s Resp., Dkt. 44. Quest has replied, Def.'s Reply, Dkt. 47. As such, this matter is ripe for adjudication. For the reasons that follow, Plaintiff's Motion to Alter, Amend, or Vacate the Court's Judgment, Dkt. 44, is **DENIED**.

### I.  FACTUAL BACKGROUND

The facts of this case are set out in greater detail in the Court's prior opinion and are therefore only briefly summarized here. *See* Summ. J. Op. at 1–3. Quest, a pharmaceutical

---

[1] This case is related to the companion case, *Motorists Mutual Insurance Company v. Quest Pharmaceuticals, Inc.*, 5:19-cv-00187-TBR, filed by a different plaintiff against the same defendant. In both cases, the Court granted summary judgment in favor of the plaintiff. Challenging each result, Quest filed identical motions to alter, amend, or vacate. Though the plaintiffs' responses have different styles, they contain similar substance.

1

distributor, has been sued for its alleged role in the opioid epidemic. *See id.* Westfield, Quest's insurer, filed suit before this Court seeking judicial declaration that its policy did not cover the allegations against Quest. *See id.* The Court granted summary judgment in favor of Westfield. *See id.* at 13. Quest subsequently filed a motion alleging that the Court made a clear error of law. Def.'s Mot. at 1.

## II. LEGAL STANDARD

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (*citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1, 2008 U.S. Dist. LEXIS 25240, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id.* (citation omitted).

As another district court in this Circuit put it, "[w]here a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 2836788, at *1, 2010 U.S. Dist. LEXIS 73664, at *1 (N.D. Ohio July 20, 2010) (internal quotation marks and citations omitted). Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.' " *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (*quoting Intera Corp. v. Henderson*, 428

F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2, 2007 U.S. Dist. LEXIS 29881, at *2 (W.D. Ky. Apr. 19, 2007) (*citing Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)).

### III. DISCUSSION

The outcome here turns on the meaning of the phrase "because of." Westfield agreed in its insurance agreement to pay "those sums that [Quest] becomes legally obligated to pay as damages *because of* 'bodily injury.' " Compl., Dkt. 1, ¶ 16 (emphasis added). Quest argues that the Kentucky Supreme Court defines "because of" in capacious terms, equating the phrase with "arising out of." Def.'s Mot. at 2. By contrast, Westfield contends that Kentucky courts treat "because of" as synonymous with "for." Pl.'s Resp. at 4. Choosing between these two different interpretations has significant implications. Adopting the broader "arising out of" interpretation makes it more likely that the insurance agreement covers the opioid claims against Quest; adopting the narrower "for" interpretation makes it less likely that the insurance agreement covers the opioid claims against Quest.

In its decision to grant summary judgment, the Court agreed with Westfield. There the Court found that "Kentucky courts and courts applying Kentucky law read the 'because of' language synonymously with 'for.' " Summ. J. Op. at 7. Quest asserts that the Court committed a clear error of law. Quest supports its position by citing four cases: *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830 (Ky. 2005).; *Ky. Cent. Ins. Co. v. Schneider*, 15 S.W.3d 373 (Ky. 2000); *Assurance Co. of Am. v. Dusel Builders, Inc.,* 78 F. Supp. 2d 607 (W.D. Ky. 1999); and *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, No. 2019-CA-1739-MR, 2020 WL 7266229 (Ky.

3

Ct. App. Dec. 11, 2020). Though Quest's motion turns mostly on *Aetna* and *Schneider*, the Court discusses each of the cases, in turn, below. Again, the Court finds that Kentucky courts read the phrase "because of" the same as the word "for."

### a. *Aetna Cas. & Sur. Co. v. Commonwealth*

Quest first argues that in *Aetna Cas. & Sur. Co. v. Commonwealth* the Kentucky Supreme Court "expressly defined the phrase 'because of' as synonymous with the phrase 'arising out of.' " Def.'s Mot. at 2. The *Aetna* case involved a nuclear waste disposal facility that had buried low-level radioactive waste in trenches. 179 S.W.3d at 833. Though this was a permissible practice at the time, rainwater caused the waste to leach out beyond the facility. *Id.* at 834. Years later, the EPA brought a CERCLA action requiring the facility to clean up the contaminated site. *Id.* at 834–35. Thinking that their insurance policy would cover the costs of the cleanup, the facility notified their insurer about the EPA's notice. *Id.* The policy obligated the insurer "to pay on behalf of the insured . . . all sums which the insured shall become legally obligated to pay as *damages because of . . . property damage* caused by the nuclear energy hazard." *Id.* at 838 (emphasis added). The insurer, however, refused to defend or indemnify and filed a declaratory judgment action seeking to establish no coverage liability. *Id.* at 835.

The policy at issue in *Aetna* did not define "damages," and the two parties disputed whether the facility's cost liability was in fact a "damage." *Id.* at 838. The *Aetna* court's analysis therefore focused on the issue of whether the government-mandated cleanup costs were "damages." *Id.* The court found that the cleanup costs were damages, writing that "the policy language, 'all sums which the insured shall become legally obligated to pay as damages *because of property damage*,' can reasonably be interpreted to cover any claim asserted against the

insured *arising out of property damage*, which requires the expenditure of money, regardless of whether the claim can be characterized as legal or equitable in nature." *Id.* (emphasis added).

Quest makes much of the fact that the *Aetna* court interpreted the policy—which covered all claims "*because of property damage*"—to cover any claim "*arising out of property damage.*" *Id.* (emphasis added). But the main problem for Quest is that the *Aetna* court repeatedly explained that its "task" was to interpret the word *damages*, not to interpret the phrase *because of*. *Id.* Indeed, immediately after the passage cited by Quest, the *Aetna* court stated that the dictionary definition of the word "damages" supports its interpretation of the policy language. *Id.* The court next described how its decision conformed with "the ordinary meaning of 'damages' " and the Sixth Circuit's "interpretation of the term 'damages.' " *Id.* at 839. The *Aetna* court even added that the insurer could have "narrow[ed] [the] definition of 'damages' " by clearly defining the term in the policy. *Id.* Nowhere in the *Aetna* decision did the court analyze the phrases "because of" or "arising out of;" nowhere in the *Aetna* decision did the court pause to explicitly say that "because of" does in fact mean the same thing as "arising out of;" and nowhere in *Aetna* decision did the court place special emphasis on the phrase "because of."

Quest claims, however, that in *Aetna* the Kentucky Supreme Court "expressly" defined "because of" as "arising out of." Def.'s Mot. at 2. But *Aetna* is better understood as a case about the Kentucky Supreme Court's interpretation of the word "damages," not about the relationship between "because of" and "arising out of." The Court finds no clear error of law in its summary judgment opinion with regard to *Aetna*.

### b. *Ky. Cent. Ins. Co. v. Schneider*

Quest next argues that the Court erred in relying on *Ky. Cent. Ins. Co. v. Schneider*.[2] In its summary judgment opinion, the Court, citing *Schneider*, stated that "[t]he Kentucky Supreme Court used damages *because of* bodily injury interchangeably with damages *for* bodily injury." Summ. J. Op. at 6 (*citing Schneider*, 15 S.W.3d at 374) (emphasis in original). Partly on that basis, the Court concluded that Westfield's insurance policy covered damages for bodily injury. *Id.* at 6–7.

The *Schneider* case was about uninsured motorist claims and punitive damages. There, a driver was rear-ended by a vehicle being operated by an uninsured motorist. The driver's insurance policy covered "*damages* which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' *because of bodily injury*." *Schneider*, 15 S.W.3d at 374 (emphasis in original). The question in *Schneider* was whether punitive damages awarded against the uninsured motorist were recoverable under the insurance policy. *Id.* at 374. The Kentucky Supreme Court held that "[d]amages *for* bodily injury are regarded as compensatory damages and include the expense of cure, value of time lost, fair compensation for physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money." *Id.* at 374 (emphasis added). The driver, therefore, was not able to recover punitive damages under the insurance policy. *See id.*

Three reasons persuade the Court that *Schneider* does in fact illustrate that Kentucky courts read "because of" and "for" synonymously. First, *Schneider* specifically considered

---

[2] Before proceeding with its analysis, the Court pauses to note that this is the only issue on which the plaintiffs in the two companion cases seem to disagree. Westfield argues that the court in *Schneider* "very plainly read damages 'because of bodily injury' synonymously with damages 'for bodily injury.' " *See* Pl.'s Resp. at 4. Motorists Mutual, however, contends that "equating these words is not the key legal principle to be derived from *Schneider*;" rather, "the relevant question is, for what will the alleged damages be awarded." *See Motorists Mutual Insurance Company v. Quest Pharmaceuticals, Inc.*, 5:19-cv-00187-TBR, Dkt. 43, at 5. However, both plaintiffs agree that Kentucky courts do not read "because of" to mean the same thing as "arising out of."

whether punitive damages were damages *because of* bodily injury. In *Schneider*, there was no question that punitive damages were "damages," nor was there a question as to the meaning of "bodily injury." 15 S.W.3d at 374. Therefore, the analysis required the court to interpret the phrase "because of." Quest argues that *Schneider* instead "turn[ed] on . . . the difference between compensatory and punitive damages." Def.'s Mot. at 4. Quest is incorrect. The parties settled the matter of compensatory damages before the lawsuit began. *See* 15 S.W.3d at 374. *Schneider* turned on the meaning of the phrase "because of bodily injury" and the result of its analysis was that the insurance policy covered compensatory damages but not punitive damages. *See id.* at 374–75.

Underpinning this conclusion is the fact that *Schneider* twice quoted the specific policy language, and each time the court italicized the phrase "because of bodily injury." *See id.* What's more, when the court quoted a statute that contained that same language, it again added emphasis to the phrase "because of bodily injury." *See id.* at 374. Those italics make it evident that in *Schneider* the Kentucky Supreme Court considered the meaning of the phrase "because of" and that phrase's impact on the scope of the policy.

Second, *Schneider* used the phrase "because of bodily injury" interchangeably with "for bodily injury." The court stated that "[d]amages *for bodily injury* are regarded as compensatory damages and include the expense of cure, value of time lost, fair compensation for physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money." *Id.* (emphasis added). Later in the opinion, the court stated that the insurance policy obligated the insurer "to pay only *damages for bodily injury* caused by an accident." *Id.* at 375 (emphasis in original). Thus, because *Schneider* emphasized that it was interpreting the phrase "because of" and it proceeded to use that phrase interchangeably with the word "for," which it

7

also placed emphasis on, the Court concludes that Kentucky courts and courts applying Kentucky law read the "because of" language synonymously with "for." *See* Summ. J. Op. at 7.

Quest asserts that *Schneider* only used the terms interchangeably because "the phrase 'because of bodily injury' is broader than and encompasses the term 'for bodily injury,' " Def.'s Mot. at 4, which means that the *Schneider* court was free to use both terms interchangeably because "punitive damages would not be covered by either," *id.* at 5. To illustrate its argument, Quest analogizes to a bartender pouring a glass bourbon. *See id.* at 4. The point here is that the bartender could refer to the drink as both "whiskey" or "bourbon," but he would not say that all whiskey can only be bourbon. *See id.* But that analogy is not quite right. In casual conversation, a bartender might refer to a glass of bourbon as whiskey. Sure. But if the bartender knew that his words were being scrutinized—perhaps a cocktail critic was ordering a drink, or maybe the bar owner was supervising the shift—he surely would take special care to specify the type of alcohol he was pouring. In *Schneider*, the Kentucky Supreme Court was like the bartender who knew his words were being examined. The court was interpreting the phrase "because of bodily injury" and expected its words to have precedential effect over Kentucky law. Thus, it is fair to conclude that court in *Schneider* was not using a broader term simply because it could.

Third, the insured in *Schneider* relied on a case, *Continental Ins. Cos. v. Hancock, Ky.*, 507 S.W.2d 146 (1973), which involved an insurance policy that required the insurer to "pay all sums which [the insured] should become legally obligated to pay *by reason of an accident resulting in bodily injury*." *See Schneider*, 15 S.W.3d at 375 (emphasis in original). The court distinguished the facts of *Schneider* from *Continental*, stating that "Continental's liability coverage obligated it to pay all damages *arising out of* any accident which resulted in bodily

8

injury." *See id.* (emphasis added; other emphasis omitted). Thus, while *Schneider* equates the term "arising out of" with "resulting in," it treats "because of" the same as "for." This part of *Schneider* directly contradicts Quest's argument that Kentucky courts read "because of" and "arising out of" synonymously. Furthermore, the Court assigns this language special weight, because here the Kentucky Supreme Court, in a side-by-side comparison, used "for" to describe a *because of* policy and "arising out of" to describe a *resulting in* policy.

Quest concludes its criticism of the Court's citation to *Schneider* by arguing that even if the Kentucky Supreme Court meant to equate "because of" and "for," *Schneider* still does not control this decision. Def.'s Reply at 4. Quest claims that *Aetna* overruled *Schneider*, even though *Aetna* never mentioned the *Schneider* decision; even though *Aetna* never spoke disapprovingly about the holding of *Schneider*; even though *Aetna* was a case about the meaning of the word "damages," not the phrase "because of;" and even though *Aetna* and *Schneider* were decided only five years apart, such a small span of time that the Kentucky Supreme Court would likely have at least discussed *Schneider* if it was overruling the case. The Court is not persuaded. Quest continues that if *Aetna* did not overrule *Schneider*—which it did not—then *Aetna* "represents a massive bungling of Kentucky law by the Kentucky Supreme Court." Def.'s Reply at 4. The *Aetna* decision was not a massive bungling of law, at least not with regard to *Schneider*. That is because the two cases were about different issues; *Aetna* was about the word "damages," *Schneider* was about the phrase "because of bodily injury."

There is no clear error of law in the Court's summary judgment opinion with regard to *Schneider*.

      **c.** *Assurance Co. of Am. v. Dusel Builders, Inc.*

The next case Quest cites in support its motion to altar, amend, or vacate is *Assurance Co. of Am. v. Dusel Builders, Inc.* When evaluating an insurance policy that obligated the insurer to pay "damages *because of* 'bodily injury,' " the *Dusel Builders* court concluded that for the insured "to be entitled to a defense and indemnification, [the insured's] claims must be *for* 'property damage.' " 78 F. Supp. 2d at 609 (emphasis added). The Court cited *Dusel Builders* once in its summary judgment opinion, using the case in a parenthetical as further support for its conclusion that Kentucky courts interpret "because of" synonymously with "for." Summ. J. Op. at 7. Quest argues that the Court erred because "the *Dusel Builders* court was [not] making a statement on how Kentucky would, or would not, interpret these phrases against one another." Def.'s Mot. at 4. Rather, according to Quest, the *Dusel Builders* court simply made a "loose" reference to *for* rather than using the more "precise" *because of* language. *Id.* at 3. Although *Dusel Builders* did not outwardly explain why it used the word "for," that case still provides some additional evidence of Kentucky courts reading "because of" and "for" synonymously. What's more, the Court did not rely solely upon *Dusel Builders*; rather the case was cited to add to the weight of precedent, which, when taken together, tilts the scales in favor of Westfield's interpretation of "because of."

After reviewing the *Dusel Builders* decision and the parties' motions, the Court finds no clear error of law in its summary judgment opinion.

      **d.** *Stone v. Ky. Farm Bureau Mut. Ins.*

Lastly, Quest relies on *Stone v. Ky. Farm Bureau Mut. Ins.*, claiming that this case, which supposedly "acknowledged the difference in the terms 'because of' and 'for' bodily injury," demonstrates that the Court clearly erred in its summary judgment opinion. Def.'s Mot. at 5.

Westfield responds that *Stone* actually supports its interpretation of the policy language. Pl.'s Resp. at 5.

In truth, *Stone* has little bearing on the Court's decision today. The *Stone* case began when a decedent was killed in a car accident. *See* 2020 WL 7266229, at *1. The settlement with the other driver was insufficient to compensate the decedent's family for loss of consortium, so the family tried to recover damages under the underinsured motorist provisions in the decedent's insurance policies. *See id.* Problematic for the family was the fact that the decedent was driving an uninsured vehicle titled in her own name when she was killed, which expressly excluded her own claims under the terms of the policy. *See id.* Although the underinsured motorist provision contained the "because of bodily injury" phrase at issue in today's case, that language did not dictate the outcome of *Stone*. *See id.* Rather, the *Stone* court concluded that the decedent's son was excluded from coverage because he "would not have a loss of consortium claim but for his mother's claim, which is expressly excluded by the Policy." *Id.* at *4. Although *Stone* discusses, in dicta, how another case read the phrase "because of bodily injury," the court in *Stone* never specifically endorsed this approach. As in *Aetna*, the outcome of the case did not turn on the "because of" policy language.

Once more, the Court finds no clear error in its summary judgment opinion.

### IV.   CONCLUSION

For the above reasons, **IT IS HEREBY ORDERED** that Quest's Motion to Alter, Amend, or Vacate, Dkt. 44, is **DENIED**

**IT IS SO ORDERED**

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

October 1, 2021

11